# McMullen v. Lockard.

### Attachment and Garnishment.

1. *Attachment and garnishment against wife's separate estate; contest with transferee of debt attached.*—The wife's statutory separate estate can not be reached by attachment or garnishment; and when an attaching creditor of the husband seeks to reach and subject, by garnishment, a debt due by promissory note payable to the husband, but given for the purchase-money of personal property belonging to the wife's statutory estate, he can not be heard, in a contest with a transferree of the note, to insist that the transfer was ineffectual to pass the wife's interest.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. W. C. McIVER, an attorney of the court, selected by the parties on account of the incompetency of the presiding judge, Hon. JAMES E. COBB, who had been of counsel in the cause.

This action was commenced by original attachment, sued out by P. S. Lockard, against John McMullen and Carrie McMullen, who were husband and wife, but they are nowhere so described in any of the proceedings in the original cause, so far as those proceedings are shown by the transcript. The affidavit for the attachment, and the attachment itself, are not set out; but the bill of exceptions states, that the attachment was returnable to the Circuit Court, on the first Monday in March, 1874, and was levied only by service of a garnishment on R. D. Cox, on the 2d September, 1873. The garnishee appeared at the March term, 1876(?), and answered: "He owes a note, made payable to John McMullen, for $150, due December 1st, 1873, according to his best recollection. Said note was given for a piano, which belonged to the wife of said John McMullen. About the 1st September, 1873, before the service of the garnishment in this case, he was notified by George W. Campbell that the note was in his possession, having been sent from Texas for a new note to be given, payable to Thomas McMullen, who claimed said note as his own, having come possessed of the same. On the same day, in the evening, or the next day, the writ of garnishment in this case was served; and he did not give the new note as requested, having been served with the garnishment, and as he thought the note was to go to Mr. Lockard. At the time the note was made, he (Cox) said, he 'did not want his note made like merchandise;' and John McMul-

len remarked, 'that the note would be left here with P. S. Lockard, and he could find it here.' He (Cox) was to pay $50, if convenient, in April, 1873, which was to be sent to John McMullen, in Texas; and if this was not done, then the note was to go to Lockard."

A notice having been issued to Thomas McMullen, as the transferree or claimant of the debt admitted by the garnishee, he appeared, and an issue was thereupon made up between him and the plaintiff in attachment; the claimant asserting " that said promissory note was transferred to him, for valuable consideration, before the service of the garnishment in this case, and he is the lawful holder thereof;" while the attaching plaintiff " took issue on the facts stated in said claim, and denied that the claimant is the owner of said note." On the trial of this issue, as the bill of exceptions shows, the note in controversy was not produced; but its contents and loss were proved by the affidavit of an attorney, with whom the claimant had left it for collection. Lockard, the plaintiff in attachment, " testified, that he drew the said note; that no one was present at the time, but himself, Cox (the maker), and John McMullen; that he understood the note was to be turned over to him: that at the time the note was sent on from Texas, for a new note payable to the claimant, as stated by the garnishee, there was no transfer on it to Thomas N. McMullen, signed by John McMullen and wife. He stated, also, on cross-examination, that he knew when the note was executed that it was given for the separate property of Carrie McMullen, having been given for a piano belonging to her separate estate." He read in evidence, also, a letter to himself, written by said Thomas McMullen, the claimant; which was dated at Waco, Texas, October 14th, 1873, and in which the writer spoke of the note having been transferred to him, in consideration of necessary provisions and supplies which he had furnished to said John McMullen (his brother) and his family, who were sick and in destitute circumstances; deprecated any litigation about the matter, and proposed to spend the amount of the note in helping his brother to make a crop the ensuing year, and to allow Lockard's debt to be first paid out of the crop, if he would consent to settle the matter in this way, " and not disturb the note."

The plaintiff having here closed, the claimant offered in evidence the depositions of himself, of said John McMullen and his wife, and of Daniel McMullen, taken on interrogatories and cross-interrogatories. Daniel McMullen thus testified: " The note mentioned was given by Cox to defendants, for a piano; and when defendants went to Texas, in January,

1873, according to my best recollection, it was left in my possession. I afterwards sent it to Thomas N. McMullen, at Waco, Texas. All that I know, in reference to the ownership of the note, is, that it was handed to me by said John McMullen, the day before he left for Texas; saying, that Cox had agreed to pay $50 on it by the first day of May that year, provided a certain suit," in which he was liable as surety for one of the parties, was not decided adversely to his principal. The material part of the claimant's testimony was in these words; "The said note was payable to John McMullen. I was in possession of it. It was transferred to me by John and Carrie McMullen, by their indorsement, and I became the *bona fide* owner, for valuable consideration—its full value in money—at the instance and request of the said Carrie and John. They were out of money, and needed money badly; and I cashed the note for them, for the purpose of helping them along. * * * It was transferred to me by said Carrie and John, by their written-indorsement, and was delivered to me; do not remember the date. It was so indorsed before it was sent back to Alabama by me, for collection. The negotiation for said note was made by me with both said Carrie and John: it was one transaction, and with both of them together." John McMullen testified, among other things, as follows: "The note was given for part payment of a piano, which I sold to Cox for $200. He paid me $50 in cash, and executed his said note for $150; and he promised to pay $50 on the note in three weeks, if he did not have certain security money to pay. The piano was the property of my wife, Carrie McMullen, whom I married in Dale county, Alabama, in 1864. Cox knew that the piano belonged to her; it was at his house, and had been rented to him for a year previous. P. S Lockard also knew the fact. He was requested to draw up the note, because he wrote a better hand than any one present. I told him, in the presence of Cox, to draw the note payable to Carrie McMullen, as the piano was her property. He stepped into his store, and wrote the note; and when he read it, I asked, why he did not make it payable to Carrie; but all present concurred in the expression, that it made no difference." In reference to the transfer of the note to the claimant, said John McMullen and his wife testified to the same facts in substance—that during the summer of 1873, their crop having failed, and they being sick and destitute, Thomas McMullen assisted them, and furnished them with necessaries equal in value to the amount due on the note; that in compensation or payment for these things Mrs. McMullen suggested to her husband that they should transfer the note on Cox to

[McMullen v. Lockard.]

him, and they agreed to do so; that Thomas McMullen sent back to Alabama, at their suggestion, for the note, and when he received it, and brought it to them, they transferred it to him by their indorsement in writing, but without attesting witnesses; and that afterwards,—at what time is not stated,— he brought it back to them, for a new indorsement in the presence of witnesses.

"This was all the evidence; and the court thereupon charged the jury, that if they believed the note in controversy was a part of the statutory separate estate of Mrs. Carrie McMullen, and that it was not transferred to the claimant by writing, signed by her and her husband in the presence of two witnesses, or acknowledged before a proper officer, before the levy of the plaintiff's attachment, they must find for the plaintiff." The claimant excepted to this charge, and requested the following charge, which was in writing: "If the plaintiff knew, at the time of the alleged transfer of the note by John McMullen to him, that said note was the separate property of said McMullen's wife, the wife was not bound by said transfer, and could afterwards assert her rights to it; and a legal transfer of the same, by herself and her husband, would convey the legal title to it." The court refused this charge, and the claimant excepted to its refusal. The charge given, and the refusal of the charge asked, are now assigned as error.

S. B. PAINE, for appellant.

ABERCROMBIE, GRAHAM & BILBRO, contra.

STONE, J.—The charge to the jury in this case puts Lockard in a category, which denies to him the right to condemn the note of Cox in the attachment suit. The statutory separate estate of Mrs. McMullen could not be reached by attachment, whether levied on property or by garnishment. *Cauly v. Blue*, 62 Ala. 77; *Saunders v. Garrett*, 33 Ala. 454. But the present suit is between the attaching creditor, and the alleged transferree; in which, the fact and *bona fides* of the transfer before service of the garnishment, can alone be put in issue and tried.—Code of 1876, §§ 3304 *et seq.*; *Rowland v. Plummer*, 50 Ala. 182.

The legal title to the note, according to the evidence, was in John McMullen, the husband, although the consideration on which it was given was the statutory estate of the wife. The testimony tends to show that, with the concurrence and approbation of the wife—in fact, with her participation—this note, for full value, was traded and transferred to Thomas N.

[Vaughan v. Marable.]

McMullen, the claimant, before the garnishment was served. The attachment suit and levy seek to condemn this debt, as the property of John McMullen. If it was not his property, but belonged to the statutory estate of the wife, then it was not the subject of garnishment, in this, or any other suit against the husband.—*Saunders v. Garrett, supra.* Proceeding, as Lockard must, and does, to condemn this note as the property of the husband, and not of the wife, he thereby disarms himself of all power of disputing the right of the husband to sell and transfer it, on the ground that it is of the statutory separate estate of the wife. The note can not be the property of the husband, liable to his debts, and, at the same time, the property of the wife, not subject to the husband's power of disposition. The two positions are irreconcilably repugnant. So, we hold that, in attaching this note as the property of John McMullen, Lockard estopped himself from denying John McMullen's power to dispose of it. In other words, he can not claim to have acquired title under the husband, and defend his possession or grasp under the title of the wife.

Reversed and remanded.